IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JANICE MARIE J., | § | |
| | § | |
| Plaintiff, | § | |
| | § | No. 3:19-cv-745-B-BN |
| V. | § | |
| | § | |
| ANDREW SAUL, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Janice Marie J. seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the hearing decision should be reversed.

**Background**

Plaintiff alleges that she is disabled due to major depressive disorder, arthritis, gout, high blood pressure, diabetes, and chronic pain in her back, legs and chest. After her application for a period of disability, disability insurance benefits, and supplemental security income ("SSI") benefits were denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on January 9, 2018. *See* Dkt. No. 14-1 at 38-60. At the time of the hearing, Plaintiff was 56 years old. *See id.* at 49. She graduated high school, and has past work experience as a warehouse order filler, housekeeper, dining room attendant, and babysitter. *See id.* at 46-47.

Plaintiff filed her application for SSI on November 9, 2015, claiming that she had been disabled since January 15, 2013. *See* Dkt. No. 14-1 at 22. At Plaintiff's administrative hearing, she amended her onset date of disability to November 9, 2015. *See id.* at 41. Plaintiff was represented by a non-attorney representative during the proceedings. *See id.* at 40.

The ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act, and therefore not entitled to SSI benefits. *See id.* at 23. The ALJ found that Plaintiff has engaged in substantial gainful activity since 2016. *See id.* at 25.

The administrative record reflects Plaintiff's earnings in 2016 from self-employment totaling $9,696. *See id.* At Plaintiff's administrative hearing, she testified that during 2016 she was babysitting over a period of seven or eight months, indicating an earnings average of between $1,212 a month (for an eight-month period) or $1,385 a month (for a seven-month period). *See id.*

Plaintiff also admitted that she was babysitting three children through the end of 2017. *See id.* at 55-56. She testified that she was paid $50 per day per child and confirmed that she earned $150 a day, or $750 per week. *See id.* But Plaintiff denied keeping records of her earnings. *See id.*

Because no twelve-month period elapsed since Plaintiff filed her application during which she did not perform substantial gainful activity, the ALJ found Plaintiff to not be disabled under Section 1614(a)(3)(A) of the Social Security Act. *See id.* at 25.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed.

Plaintiff then filed this action in federal district court. Plaintiff challenges the hearing decision on two grounds: (1) The ALJ erred in failing to consider whether Plaintiff was disabled after November 2017; and (2) The presiding ALJ was not properly appointed under the Constitution and therefore lacked legal authority to hear and decide her case. *See* Dkt. No. 18.

The undersigned concludes that the hearing decision should be reversed and remanded to the Commissioner of Social Security for further proceedings consistent with these findings and conclusions.

### Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its

judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id*. However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's

substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

I.   The ALJ Properly found that Plaintiff was engaged in substantial gainful activity.

Plaintiff first argues that the ALJ committed a reversible error when he found that there was no continuous twelve month period during which Plaintiff had not engaged in substantial gainful activity. *See* Dkt. No. 18 at 3-5. Specifically, Plaintiff argues that the ALJ should have adjudicated the period after November 2017, when Plaintiff had stopped working. *See id.*

The Social Security Act defines "disability," in relevant part, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. § 423(d)(1)(A) (West 2004).

At step one of the disability determination process, the ALJ determines whether the claimant engaged in substantial gainful activity during her alleged disability period. 20 C.F.R. § 404.1520(a)(4)(i). "[I]f the claimant is working and [her] work

-6-

constitutes substantial gainful activity, then the [ALJ] will find the claimant not disabled, regardless of the claimant's medical condition," age, education, or work experience. *Durham v. Astrue*, No. 11–1482, 2012 WL 3879534, at *4 (W.D. La. July 31, 2012), *recommendation adopted*, 2012 WL 3879274 (W.D. La. Sept. 5, 2012) (citing 20 C.F.R. § 404.1520(b)); *see also Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam).

Substantial gainful activity is work activity that "involves doing significant physical or mental activities" and is done, or is "usually done, for pay or profit, whether or not a profit is realized." 20 C.F.R. §§ 404.1572–404.1573, 416.972–416.973; *Singletary v. Bowen*, 798 F.2d 818, 820 (5th Cir. 1986); *see also* Social Security Ruling (SSR) 83–33, 1983 WL 31255, at *1 (S.S.A 1983) ("'Significant [work] activities' are useful in the accomplishment of a job and have economic value."). The claimant's "countable earnings" are the "primary consideration" in determining whether her work activity constitutes substantial gainful activity. 20 C.F.R. §§ 404.1574(a)(1), 416.974(a) (1); SSR 83–33, 1983 WL 31255, at *2.

To calculate countable earnings, the ALJ "determine[s] [the claimant's] gross earnings, i.e., the total earnings reported for work activity" during the relevant period, "subtract[s] the value of any subsidized earnings ... and the reasonable cost of any impairment-related work expenses," and "average[s] [the net] earnings over the entire period of work requiring evaluation." 20 C.F.R. §§ 404.1574a(a), 404.1574(b); SSR 83–33, 1983 WL 31255, at *3. If the claimant's average monthly countable earnings exceed a designated threshold amount, she will "ordinarily" be found to have engaged

in substantial gainful activity, and if they fall below a designated floor, she will "ordinarily" be found not to have engaged in substantial gainful activity. 20 C.F.R. §§ 404 .1574(b), 416.974(b); *Durham*, 2012 WL 3879534, at *5.

Here, Plaintiff's earning records show earnings amounting to $9,696 for 2016. *See* Dkt. No. 14-1 at 191. And, the ALJ questioned Plaintiff at the administrative hearing about her work history in 2016:

> ALJ: How many months out fo 2016 did you do babysitting?
>
> CLMT: I'd say like, seven or eight months.
>
> ALJ: Do you have records to show how many months you were babysitting?
>
> CLMT: No, sir.
>
> ALJ: Did you keep, like, financial records to show how much you were paid and when you were paid?
>
> CLMT: No, sir.

*See* Dkt. No. 14-1 at 53-58.

Plaintiff admitted that she worked for seven or eight months in 2016, averaging an income of $1,212 or $1,385 a month respectively.

And, while there are no financial records to show how much Plaintiff was paid in 2017 either, she testified to working in 2017 and stated that she made an average of $150 a day:

> ALJ: Did you babysit during 2017?
>
> CLMT: No, sir.
>
> ALJ: You didn't?
>
> CLMT: No, sir.
>
> ALJ: When did you stop babysitting?

CLMT: I think the last of, was it in November last year? End up the '17 year I think.

ALJ: 2017?

CLMT: Yes, sir.

ALJ: 2017 is the year that just ended. We're now in 2018 by nine days.

CLMT: Yeah –

ALJ: Okay. So where you babysitting last year during 2017?

CLMT: Yes, sir.

ALJ: Okay

CLMT: babysitted some, yes sir, I'm sorry.

ALJ: Do you have records of how much money you were paid babysitting in 2017?

CLMT: No.

*See* Dkt. No. 14-1 at 54-55. Although Plaintiff's testimony is confusing, the ALJ asked a series of clarifying questions as to whether Plaintiff worked in 2017 and she confirmed that she did. *See id.* Plaintiff explained that up until November 2017, she babysat, on average, three children a day for five days a week, at a rate of $50 per child for an average total of $750 a week, or $3000 a month. *See id.* at 55-56.

The Social Security Administration's Program Operations Manual System (POMS) shows that for 2016, countable income is substantial if the amount averages more than $1,130 per month . *See* DI 10501.015 , Tables of SGA Earnings Guidelines and Effective Dates Based on Year of Work Activity, https://secure.ssa.gov/poms.nsf/lnx/0410501015. For 2017, that amount increased to $1,170. *See id.* Plaintiff's work activity clearly exceeds those amounts.

-9-

Plaintiff argues that the ALJ should have adjudicated the period after November 2017 in order to calculate whether she had been engaging in substantial gainful activity.

The undersigned disagrees. The record shows that, even if the ALJ were to include the period from November 2017 to May 2018 in his analysis, there would still be no twelve-month duration since Plaintiff's onset date in which Plaintiff was not engaged in substantial gainful activity.

The undersigned finds that there is substantial evidence in the record to support the ALJ's decision in finding that Plaintiff had engaged in substantial gainful activity.

II.    Plaintiff did not waive her challenge under the Appointments Clause.

Plaintiff also challenges the legal authority of the ALJ assigned to her case under the Supreme Court's decision in *Lucia v. SEC*, 138 S. Ct. 2044 (2018), arguing the ALJ was not properly appointed under the U.S. Constitution's Appointments Clause. *See* Dkt. No. 18 at 6-9.

"The Appointments Clause of the Constitution lays out the permissible methods of appointing 'Officers of the United States,' a class of government officials distinct from mere employees." *Lucia*, 138 S. Ct. at 2049 (citing Art. II, § 2, cl. 2). In *Lucia*, the Supreme Court held that ALJs are "Officers of the United States" within the meaning of the Appointments Clause. *Id.* at 2055. The Supreme Court has previously held that "one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case" is entitled to relief in the form of a new "hearing

-10-

before a properly appointed" official. *Ryder v. United States*, 515 U.S. 177, 182–83 (1995). In *Lucia*, the Supreme Court clarified that the new official cannot be the improperly appointed official, even if the official has since obtained a constitutional appointment. *See* 138 S. Ct. at 2055. Accordingly, "[t]o cure the constitutional error, another ALJ (or the [executive agency] itself) must hold the new hearing to which [the claimant] is entitled." *Id.*

Plaintiff, relying on *Lucia,* claims that the ALJ is an officer of the United States and, according to the Appointments Clause, must be appointed by either the President, the courts of law, or the head of a department. *See* Dkt. No. 18 at 6-9. Plaintiff argues that the ALJ who conducted the hearing and issued the decision in this case was not properly appointed under the Appointments Clause at the time of the hearing and thus did not have legal authority to preside over this matter. *See id.*

In the Commissioner's response, he does not contest that the ALJ was not duly appointed but instead argues that, regardless of whether the ALJ was properly appointed in accordance with the Appointments Clause, Plaintiff waived this challenge by failing to raise it at the administrative level. *See* Dkt. No. 19 at 12-17. In other words, the Commissioner argues, Plaintiff's challenge is not timely because Plaintiff failed to exhaust her remedies at the administrative level.

Although the United States Court of Appeals for the Fifth Circuit has not decided the issue, the United States Court of Appeals for the Third Circuit recently decided against an exhaustion requirement for Appointments Clause challenges. In *Cirko v.*

*Commissioner of Social Security,* __ F.3d. __, 2020 WL 370832 (3d Cir. 2020), the Court

of Appeals held that

> there is no statutory or regulatory exhaustion requirement that governs
> SSA proceedings. Thus, whether we should impose an exhaustion
> requirement here "is a matter of sound judicial discretion." *Cerro Metal
> Prods. v. Marshall,* 620 F.2d 964, 970 (3d Cir. 1980). To determine
> whether to impose an exhaustion requirement where we have not done
> so before, we must assess (a) the "nature of the claim presented," (b) the
> "characteristics of the particular administrative procedure provided," and
> (c) the proper "balance [between] the interest of the individual in
> retaining prompt access to a federal judicial forum [and] countervailing
> institutional interests favoring exhaustion." *McCarthy v. Madigan,* 503
> U.S. 140, 146 (1992). As explained below, each of these considerations
> supports the conclusion that exhaustion of Appointments Clause claims
> is not required in the SSA context.

2020 WL 370832 at *2. The Third Circuit panel first explained that the nature of

Appointments Clause claims do not favor exhaustion:

> As a general matter, exhaustion is appropriate for certain claims
> involving "exercise of the agency's discretionary power or when the
> agency proceedings in question allow the agency to apply its special
> expertise." *Id.* at 145. But exhaustion is generally inappropriate where
> a claim serves to vindicate structural constitutional claims like
> Appointments Clause challenges, which implicate both individual
> constitutional rights and the structural imperative of separation of
> powers. *Glidden Co. v. Zdanok,* 370 U.S. 530, 536-37 (1962).

*Id.* The Court of Appeals next turned to the characteristics of SSA review and found

that,

> [l]ike Appeals Council hearings, ALJ hearings have no express
> exhaustion requirement. *See, e.g*, *McWilliams v. Berryhill,* No. 18-5180,
> 2019 WL 2615750, at *8 (E.D. Pa. June 26, 2019) ("No matter how
> tortured the reading, the SSA regulations fail to squarely address
> [exhaustion]."). And like Appeals Council hearings, ALJ hearings are
> inquisitorial and driven by the agency rather than the claimant: Whereas
> ALJs must "look[] fully into the issues," "[a]ccept[] as evidence any

> documents that are material to the issues," and "decide when the evidence will be presented and when the issues will be discussed," 20 CFR § 404.944, claimants need not even state their case or present written arguments. *See id.* § 404.949.

*Id.* at \*4. The Third Circuit in *Cirko* held that the characteristics of SSA review weigh

against an exhaustion requirement for Appointments Clause challenges.

Next, the panel balanced the individual and governmental interests and found

that

> an exhaustion requirement for Appointments Clause claims would impose an unprecedented burden on SSA claimants who are subject, not to an adversarial process, but to an inquisitorial review process.
>     While exhaustion may be broadly required in an agency where "it is usually 'appropriate under [the agency's] practice' for 'contestants in an adversary proceeding' before it to develop fully all issues there," the SSA's inquisitorial system does not fit that description.

*Id.* (internal citations omitted). And

> an exhaustion requirement would prejudice those claimants who go unrepresented at their ALJ hearings and then, perhaps with the benefit of counsel, seek to raise such a claim in federal court. These *pro se* claimants already face "a disadvantage in the unfamiliar world of law because they lack the specialized training of attorneys" and struggle to recognize technical legal claims like the Appointments Clause claims here. Requiring exhaustion would make the consequences of that disadvantage irreparable by precluding these claimants from vindicating their rights under the Appointments Clause in federal court proceedings. And we have little reason to think those rights will elsewhere be vindicated: While ALJs must probe for meritorious arguments more carefully where claimants are unrepresented, even the most diligent ALJ is unlikely to raise a *sua sponte* objection to his own appointment.

*Id.* (internal citations omitted).  On the other hand, the court found the government's

interest in requiring exhaustion to be low:

> Traditionally, two governmental interests favor exhaustion: deference to agency expertise and opportunity for agency error correction. Neither is implicated here.
>
> The first, deference to agency expertise, is rendered irrelevant here by the well-worn maxim that constitutional questions, including Appointments Clause challenges, are "outside the [agency's] competence and expertise." "[C]ourts are at no disadvantage in answering" Appointments Clause claims, and the Commissioner therefore has no legitimate basis to argue that agency expertise requires that those claims be exhausted before the agency.
>
> The second traditional rationale for exhaustion is no more applicable. We need not give an agency the opportunity for error correction that it is incapable of providing—i.e., where it is not "empowered to grant effective relief." This case falls squarely in that category: At neither the trial nor the appellate levels could the SSA's administrative judges cure the constitutionality of their own appointments, whether by reappointing themselves, *see Lucia*, 138 S. Ct. at 2051 (explaining that "the President, a court of law, or a head of department" must appoint ALJs), or by transferring the case to a constitutionally appointed ALJ.

*Id.* at *5 (internal citations omitted).

In *Cirko,* the Commissioner argued that a ruling rejecting an exhaustion requirement would open the floodgates to the "'many hundreds of cases in federal district courts in which disappointed claimants have sought to raise unpreserved Appointments Clause challenges for the first time,'" *id.* at *6, and that those "cases, we are told, are 'just the tip of the iceberg' because ALJs issued 493,000 appealable dispositions in fiscal year 2018 and, without an exhaustion requirement, 'every disappointed claimant could obtain a do-over before a new ALJ simply by raising a *Lucia* claim in district court.'" *Id.* The Third Circuit panel responded that

> we deal in facts, not hyperbole, and, on inspection, the purported flood is actually a trickle. Under the applicable procedural rules, claimants must appeal the Appeals Council's decision to the District Court within sixty days, 42 U.S.C. § 405(g), and *Lucia* was decided more than a year ago,

> 138 S. Ct. at 2044. That means every claimant whose benefits were denied prior to *Lucia* has long since either filed an appeal in district court or become time-barred from doing so. Those whose claims were still at the initial stage will have their claims adjudicated by a constitutionally appointed ALJ. And the SSA, in the meantime, has promulgated administrative guidance instructing that claimants with cases then pending on administrative appeal would have their claims reviewed *de novo* before the now-duly-appointed Appeals Council.

*Id.* The Third Circuit therefore held that, in the social security context, "Appointments Clause challenges – given their importance to separation of powers and, ultimately, individual liberty – are claims for which exhaustion is not required." *Id.* at 4.

The undersigned agrees and adopts the *Cirko* decision's reasoning here. Based on the reasoning set forth above, Plaintiff has appropriately challenged the appointment of her ALJ, and the Commissioner does not dispute the merits of that challenge. Remand is required on this issue.

## Recommendation

For the reasons explained above, the hearing decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with these findings and conclusions.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the

magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 30, 2020

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE